## EL PUEBLO *v.* VÉLEZ.

### APELACIÓN procedente de la Corte de Distrito de Mayagüez.

No. 363.—Resuelto en octubre 23, 1911.

DERECHO PENAL—CIRCULACIÓN Y COBRO DE UN CHEQUE FALSIFICADO—PLIEGO DE EXCEPCIONES Y RELACIÓN DE HECHO.—En un pliego de excepciones o relación de hechos no debe incluirse la argumentación de los abogados sobre las objeciones presentadas sino que deben consignarse suscintamente las cuestiones debatidas y las resoluciones dictadas por el tribunal.

ID.—PRUEBAS—ERRORES EN LA ADMISIÓN DE PRUEBA.—En los casos juzgados ante el tribunal de derecho la admisión de prueba impertinente para ser considerada por el juez en conjunto con todo el resto de la prueba, no constituye un error que sirva de base para revocar la sentencia porque el tribunal, al resolver, apreciará todos los elementos probatorios en conjunto dando a cada uno la importancia que se merece.

ID.—COBRO DE CHEQUE FALSIFICADO—COTEJO DE LA FIRMA DEL ACUSADO.—Examinada la prueba practicada el tribunal resolvió que quedó demostrado que el acusado pasó el cheque sabiendo que había sido alterado y aumentado su importe, y no cometió error la corte sentenciadora al permitir que se cotejara la firma del acusado con una carta dirigida por el mismo a la persona que firmó el cheque para demostrar que sabía que el importe del cheque había sido alterado cuando lo cobró, sin que fuera necesaria la presentación de prueba de peritos calígrafos para cotejar la firma del acusado, pues no se trataba de determinar que él lo había falsificado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José de Guzmán Benítez.*

Abogado del apelado: *Sr. Jesús M. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

La presente es una causa criminal seguida por haberse circulado y pasado un cheque falsificado. El acusado es un muchacho de quince o diez y seis años de edad que, habiendo sido declarado culpable, fué llevado a la escuela correccional.

En la denuncia se formula la siguiente acusación:

"Allá por el día nueve de agosto del año 1910 y en esta ciudad de Mayagüez, que forma parte del Distrito Judicial de Mayagüez, P. R., el referido acusado, Agustín Vélez, compró varios efectos para bicicletas, por valor de 13 a 14 dollars, en el establecimiento que en esta ciudad tiene y tenía entonces, Blas Panzardi, y en pago de su compra el susodicho acusado Agustín Vélez circuló y pasó como genuino, entregándolo al dicho Blas Panzardi, quien lo recibió y de su importe se cobró, un check que, copiado, dice así:

" 'No. 104. San Juan, Porto Rico, Aug. 6, 1910. Depositary for the Government of Porto Rico. American Colonial Bank, depositary for the United States. Pay to the order of Alfredo Román $50.17/00. Fifty 17/00 dollars. Firmado: Matalena H. Koehler.' Endosado con la firma 'Alfredo Román.'

"Y dicho acusado Agustín Vélez, al circular y pasar el referido check como genuino, sabía que el mismo había sido alterado o falsificado, y lo hizo a sabiendas y maliciosamente y con la intención de defraudar, como defraudó, al mencionado Blas Panzardi. Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico. Firmado, D. Sepúlveda, Fiscal del Distrito."

El juicio de esta causa se celebró por el tribunal, sin jurado, declarándose al acusado culpable del delito que se le había imputado, y condenándosele en 30 de marzo último a la pena de un año de presidio, con trabajos forzados, y al pago de las costas. Se le envió a la escuela correccional para jóvenes delincuentes, para cumplir en ella su condena.

Se interpuso a su debido tiempo un recurso de apelación, y aparecen en los autos un pliego de excepciones y una relación de hechos, en los cuales se consignan las pruebas aducidas en el juicio, y las excepciones tomadas contra las reso-

luciones del tribunal, y hasta la argumentación del letrado defensor con respecto a las mismas.

Esta minuciosidad es innecesaria o impropia. Todas las materias extrañas, tales como las argumentaciones del letrado defensor, deben excluirse del pliego de excepciones, y consignarse brevemente los puntos en cuestión, con las resoluciones dictadas por el tribunal con respecto a los mismos. Antes de firmarlos, los jueces sentenciadores deben exigir que todos los documentos de esa índole sean formulados y arreglados en debida forma, para su presentación ante este tribunal, de tal modo que aligeren nuestras labores en vez de aumentarlas.

Las excepciones tomadas pueden brevemente reproducirse como sigue:

"El tribunal incurrió en error: 1°. Porque el tribunal autorizó, no obstante la oposición del letrado defensor, el cotejo del cheque falsificado, objeto de la acusación, con otro documento firmado por el padre del acusado, pero cuyo texto se decía que estaba escrito por éste, sin que dicho documento previamente hubiera sido identificado en debida forma.

"2°. Porque el tribunal permitió el cotejo de ambos documentos, no obstante la objeción del letrado defensor, quien alegó que dicha prueba era inmaterial e inconsistente con la acusación; porque ésta sólo imputaba al acusado el hecho de haber pasado, como genuino, el cheque en cuestión, sabiendo que estaba falsificado o alterado."

La prueba de que se queja el acusado, fué admitida por la corte, solamente como una circunstancia tendente a demostrar la culpabilidad del acusado, cuya circunstancia debía considerarse en la resolución definitiva de la causa; y en esto, el tribunal no cometió ningún error. La objeción ha debido hacerse como se hizo hasta cierto punto en la segunda excepción, más bien contra el efecto que no contra la admisión de dicha prueba.

Toda vez que la causa fué juzgada por la corte, sin jurado, no resultó de las resoluciones de que se queja el acusado, ningún perjuicio para él, pues todo el cúmulo de hechos fué de-

bidamente considerado en conjunto para llegar a una conclusión definitiva en la sentencia dictada por el tribunal. (Véase el caso de *Belber* v. *Calvo,* resuelto en 19 de mayo de 1910.) Y además, si es que el tribunal sentenciador cometió los errores que se alegan, éstos no eran perjudiciales, puesto que fueron corregidos en la consideración del caso entero, y al dictarse la sentencia definitiva. Por consiguiente, como no perjudicaron al acusado, no constituyen motivo para la revocación de la sentencia. (*P. P. R.* v. *Milán,* 7 P. R. R., 443 y 444; *P. P. R.* v. *Aybar,* 7 P. R. R., 518.)

El acusado sostiene que la prueba no es suficientemente vigorosa para justificar la declaración de su culpabilidad. Toda la contradicción que existe entre las declaraciones de los testigos, queda demostrada por la historia del acusado, de que él había perdido el cheque y la carta de recomendación que fueron presentados a Panzardi; y que desde entonces no los había vuelto a ver. Evidentemente, el tribunal sentenciador no dió crédito a esa declaración.

El acusado niega haber estado en la tienda de Panzardi, y haber comprado los efectos de bicicleta, para cuyo pago se entregaron la carta de Liciaga y el cheque alterado, que él manifestó haber perdido, pero asegura que envió a un amigo para la compra de los efectos; y no dice, sin embargo, el nombre de ese amigo a quien él tenía que conocer.

Las pruebas pueden resumirse como sigue:

Vicente Vélez, padre del acusado, tenía arrendada a la Señorita Koehler, que era profesora, una casa de su propiedad, en el pueblo de Isabela; y el acusado ordinariamente iba a la casa de dicha señorita, a cobrarle el alquiler de esa casa, y a entregarle el recibo correspondiente. En 31 de julio de 1910, el acusado fué adonde la Señorita Koehler, a cobrar el importe del alquiler, presentándole un recibo firmado por su padre; resultando más tarde, que la letra de ese recibo que llevó el acusado mismo a la inquilina, no era de su padre, quien no sabía escribir, ni de la madre, ni del hermano tam-

poco, únicas personas que al parecer, constituían la familia del acusado.

El acusado pidió a la Srta. Koehler un cheque por $5.17, para comprar ciertos objetos en los Estados Unidos. Esta súplica la hizo mediante un papel firmado por él, y escrito por él, y le rogó que no escribiera nada en la línea destinada, en esta clase de documentos, a poner el nombre de la persona, a cuyo favor se expiden; pero a pesar de este ruego, la Srta. Koehler escribió el cheque por la expresada suma de $5.17, poniendo en el mismo, el nombre del acusado, como la persona a quien debía pagarse dicho importe.

Al mismo tiempo que el acusado solicitó de la Srta. Koehler ese cheque, le pidió a Severiano Liciaga una carta de recomendación para Blas Panzardi de Mayagüez, para que le vendiese al precio más bajo posible, ciertos efectos de bicicletas que el acusado se proponía comprar allí.

No hay duda ninguna de que el cheque expedido por la Srta. Koehler, lo fué sólo por la suma de $5.17, a nombre de Agustín Vélez, y que dicho cheque fué recibido por el acusado, tal como salió de manos de la Srta. Koehler. Y así adquiridos esos documentos por el acusado, no se volvió a tener más noticias de ellos, hasta que se encontraron en poder de Blas Panzardi, a excepción, desde luego, de la declaración del acusado, de que los había perdido.

En el establecimiento de Panzardi, fué entregada la carta de Liciaga, tal como él la había escrito, y también el cheque firmado por la Srta. Koehler, pero completamente alterado, llevando el nombre de Alfredo Román, en vez del de Agustín Vélez, como persona a quien debía pagarse el importe del mismo, y sustituyéndose las palabras y cifras que expresaban la suma de $5.17, cinco dollars, diez y siete centavos, y que primero se habían escrito en dicho cheque, por las que expresan la suma de cincuenta dollars diez y siete centavos ($50.17).

Blas Panzardi era la persona directa y materialmente perjudicada por la comisión del delito. No tenía ningún interés

personal en la persecución del acusado, a quien ni siquiera conocía; y sólo le guiaba el propósito de recobrar la suma de la cual había sido defraudado. Y como esa cantidad le fué restituída, no necesitaba esforzarse mucho en el juicio, demostrando o recordando que fué ciertamente el propio acusado quien estuvo en su casa a comprar esos efectos, y a dar en cambio el cheque alterado. Pero, a pesar de eso, Panzardi no dice que el acusado no haya estado en su casa; dice sólo que no puede recordar, al cabo de tanto tiempo, que fuera o nó él, quien estuvo en su casa en esa ocasión; que le dijeron que fué él, el acusado, pero que no lo conocía al verle en el tribunal. Sin embargo, no se indicó ni identificó ninguna otra persona como la que había pasado el cheque. Pero, a pesar de eso, el testigo declara que la persona que le llevó el cheque y se lo pasó como genuino, estuvo en su casa por la noche; y que después no lo vió más. Evidentemente, el comerciante, después de haber recobrado el dinero de que había sido defraudado, era un testigo desinclinado a declarar.

La prueba testifical que antecede, demuestra una causa bastante grave contra el acusado, y no podemos decir que el juez sentenciador haya faltado a su obligación de examinar y considerar debidamente todos los hechos y circunstancias que se han consignado. Dicho Juez tuvo delante al acusado y a todos los testigos, y oyó sus declaraciones cara a cara.

Además, hay otras consideraciones que hacer con respecto a estos hechos, que no deben perderse de vista. La única explicación que Agustín Vélez da de su intervención en estos hechos, es la de que el cheque juntamente con la carta, se le había perdido, pero no dijo que había hecho gestión alguna para recobrar dichos documentos, que sin duda eran muy importantes para él, puesto que para la adquisición del cheque, había hecho lo posible para economizar dinero, hasta el extremo de ahorrarse los ocho centavos que hubiera tenido que pagar si hubiera solicitado un giro postal. No dió cuenta a la policía, ni a sus familiares, ni a la Srta. Koehler, de la pérdida de ese documento, ni la notificó al banco, para que no

pagase el cheque.  Y luego, cuando apareció dicho cheque, ya alterado, en la casa de Panzardi, en vez de inquirir qué persona lo había llevado allí, para averiguar quién era el autor de la falsificación, o quién había tratado de pasarlo como genuino, no dijo absolutamente nada; y era su padre quien vino a pagar a Panzardi la cantidad de la cual había sido defraudado; y el padre del acusado hizo esto sin tener para ello ninguna obligación, si es que dicho acusado estaba enteramente desligado de la serie de circunstancias que constituían la comisión del delito.

Es muy significativo este hecho realizado por el padre del acusado, puesto que tanto el padre como su hijo, han debido ser factores muy importantes en el descubrimiento del delincuente, quien quiera que fuera.

Y es igualmente muy significativo, que la persona que haya encontrado el cheque y la carta, hubiera tenido necesidad también de comprar efectos para bicicleta, y que hubiera ido al mismo establecimiento de Panzardi, a comerciar con él, dando lugar a ser descubierto, porque si la persona que encontró dicho cheque, hubiera sido otra, y no el acusado, es probable que lo hubiera negociado en otra parte, para no dejar huella alguna de su intervención en el asunto.

La Srta. Koehler no fué un perito calígrafo, pero aseguró la semejanza de la letra del acusado, como su discípulo que era, con la del recibo de la casa, fechado en 31 de julio de 1910.  Como no se trataba de un reconocimiento caligráfico, para determinar una falsificación que no se había imputado nunca al acusado, no hacían falta documentos indubitados, ni peritos calígrafos, ni ninguna otra solemnidad en la práctica de esa prueba.  Se trataba sólo de afirmar un hecho de alta significación en el procedimiento, es decir, que el falsificador del cheque era la misma persona que escribió el recibo para el cobro de los alquileres a la Srta. Koehler, documento de índole absolutamente privada, y que no es presumible que fuera escrito por alguna otra persona distinta de los familiares del acusado.  Pero ese hecho por sí sólo, no es la única y deci-

siva evidencia en el juicio, sino una prueba de certeza moral, que unida a todas las demás circunstancias que rodearon el presente caso, llevan el ánimo a la conclusión de que el acusado utilizó ese cheque, a sabiendas de su alteración, para obtener ilegítimamente una cantidad de dinero.

Al revisar detenidamente todos los autos, no podemos evitar la conclusión de que el muchacho pasó el cheque, sabiendo que había sido alterado y aumentado su importe, si es que él no hizo la falsificación misma. Toda vez que se le imputó, no la falsificación del cheque, sino sólo el haberlo pasado como genuino, y que fué declarado culpable de ese delito solamente, debemos dejar subsistente la sentencia.

*Confirmada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Presidente Sr. Hernández, no tomó parte en la resolución de este caso.